IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| REGINALD ALAN DAVIS, | ) |  |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-3076-STA-cgc |
| | ) | |
| CITY OF MEMPHIS FIRE | ) | |
| DEPARTMENT; MAYOR A.C. | ) | |
| WHARTON; ALVIN BENSON, | ) | |
| individually and in his official capacity | ) | |
| as Director of the Fire Department; | ) | |
| SANDRA RICHARDS, individually and | ) | |
| in her official capacity; and DARYL | ) | |
| PAYTON, individually and in his | ) | |
| official capacity, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

**ORDER DENYING PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER**

---

Before the Court is Plaintiff's Motion for an Emergency Temporary Restraining Order, Preliminary, and Permanent Injunction Enjoining the City of Memphis Fire Department from Holding an Administrative Hearing and in the Alternative from Barring Lieutenant Davis' Attorney from the Hearing (D.E. # 40), filed on April 25, 2012 at 2:38 p.m, (D.E. # 41), filed on April 25, 2010 at 4:00 p.m., and (D.E. # 42), filed on April 25, 2012 at 4:30 p.m.[1] For the following reasons, Plaintiff's Motion for a Temporary Restraining Order ("TRO") is **DENIED**.

---

[1] These Motions appear to be identical except for the change in Plaintiff's Counsel's signature to conform with the Western District's ECF Policies and Procedures.

1

This Order does not address Plaintiff's Motion for a Preliminary or Permanent Injunction, and they remain pending.

## BACKGROUND

Plaintiff initially filed his Complaint on December 10, 2011. (D.E. # 1.) He filed an Amended Complaint on December 13, 2011 (D.E. # 4), and filed a Revised and Corrected Amended Complaint (D.E. # 15) on December 22, 2011. It is this Revised and Corrected Amended Complaint ("the Amended Complaint") which the Court has reviewed and upon which the Court relies for purposes of this Motion.

Defendant the City of Memphis ("the City of Memphis") issued a Notification of Administrative Investigation and Hearing ("the Notification") on April 19, 2012, at 11:57 a.m. ("the Hearing"). (D.E. # 40-1, at 1.) This investigation arose from possible violations of the Division of Fire Services Operations Manual and/or the City of Memphis Personnel Manual for three separate instances: a June 8, 2011, factfinding investigation relating to allegations of Defendant Deputy Chief Daryl Payton's alleged assault on Plaintiff, Plaintiff's alleged appearance on Channel 24 Eyewitness News on April 2, 2012, with his counsel, and his counsel's alleged April 16, 2012, statements regarding Plaintiff's airport-firehouse related statements. (*Id.*)

The Hearing is set for April 26, 2012, at 7:30 a.m. (*Id.*) At the Hearing, Plaintiff is entitled to Union representation. (*Id.*) Moreover, "[t]he results of this investigation and [H]earing could lead to disciplinary action being taken against [Plaintiff], up to and including termination." (*Id.*)

## STANDARD OF REVIEW

2

Federal Rule of Civil Procedure 65(b) governs TROs, and it provides that "the court may issue a [TRO] without written or oral notice to the adverse party or its attorney only if" the moving party satisfies two requirements.[2] First, the moving party must present "specific facts in an affidavit or a verified complaint [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."[3] Second, the moving party's attorney must certify "in writing any efforts made to give notice and the reasons why notice should not be required."[4]

TROs are "extraordinary remed[ies] which should be granted "only in the limited circumstances which clearly demand [them]"[5] and then "only if the movant carries his or her burden of proving that [those] circumstances clearly demand [them]."[6] The factors considered in granting a TRO or a preliminary injunction are similar in nature;[7] thus, when determining whether a plaintiff is entitled to a TRO, courts consider four factors:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.[8]

---

[2] Fed. R. Civ. P. 65(b).

[3] Fed. R. Civ. P. 65(b)(1)(A).

[4] Fed. R. Civ. P. 65(b)(1)(B).

[5] *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

[6] *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

[7] *Ray v. Franklin Cnty. Bd. of Elections*, No. 2:08-cv-1086, 2008 WL 4966759, at *1 (S.D. Ohio Nov. 17, 2008).

[8] *Leary*, 228 F.3d at 736.

Courts "balance [these factors] against each other" in their evaluation of whether to issue a TRO, but they do not serve as prerequisites.[9]

## ANALYSIS

At the outset, the Court finds that Plaintiff has narrowly met the initial requirements of Rule 65(b)(1). Plaintiff did not file an Affidavit with his Motion. While Plaintiff's Amended Complaint was not verified,[10] he did verify his Motion, thereby satisfying a broad reading of Rule 65(b)(1)(A)'s requirement that a TRO movant present "a verified complaint." Moreover, Plaintiff provided a Certification of Notice which indicates that his counsel began attempting to contact counsel Herman Morris[11] for the City of Memphis on Saturday, April 21, by email, hand-delivered letter, and telephone. His counsel also attempted to contact Venita Martin and Robert Spence, counsel of record for all Defendants in this case, by phone on April 24, 2012, but she left a voicemail "advising them that an application would be made by [Plaintiff] of a [TRO]."[12] Plaintiff's counsel also provided "reasons why [notice] should not be required" as mandated by Rule 65(b)(1)(B), but her reasons leave much to be desired: she merely stated that "[t]his is an emergency situation and time is of the essence in order to prevent [Plaintiff] from irreparable

---

[9] *Overstreet*, 305 F.3d at 573.

[10] The Court notes that Plaintiff's original Complaint was verified by Plaintiff, and the first version of his unrevised and uncorrected amended Complaint (D.E. # 4) was verified as well.

[11] The Court notes that Herman Morris has not entered a Notice of Appearance on behalf of the City of Memphis in this case. The City of Memphis' sole counsel of record is Venita Martin.

[12] (D.E. # 40, at 15.)

4

injury. Therefore notice should not be required."[13] Therefore, the Court finds that Plaintiff has satisfied the threshold requirements of Rule 65(b)(1).

However, the Court finds Plaintiff's initial arguments unavailing. Plaintiff's initial grounds for his TRO are the Sixth Amendment right to counsel, attorney-client privilege, and Federal Rule of Civil Procedure 32 ("Rule 32").[14] First, the Sixth Amendment provides that "in all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense."[15] Thus, by its text, the Sixth Amendment does not apply to Plaintiff because the Hearing is not a criminal prosecution. Moreover, the Notification provides that Plaintiff is entitled to Union representation. Second, as for attorney-client privilege, "it is important also to recognize that under the law of this country a communication covered by attorney-client privilege is entitled to protection regardless of whether the proceeding is civil, criminal or administrative, whether the question arises in grand jury, in discovery or at trial, unless the client has waived the privilege."[16] Thus, Plaintiff should be able to assert the attorney-client privilege at the Hearing, and his fears of waiving the attorney-client privilege are not good grounds for granting a TRO. Third, Rule 32 governs the use of depositions in court proceedings; the Hearing is not a deposition, and Plaintiff is not yet at a trial in this Court at which Rule 32 would apply. Therefore, the Court finds that

---

[13] (*Id.*)

[14] (Pl.'s Mot., D.E. # 40, at 1.)

[15] U.S. Const. amend. VI.

[16] *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 188 F.R.D. 189, 199-200 (S.D.N.Y. 1999).

5

these grounds do not merit granting a TRO. However, the Court will also address the substance of Plaintiff's Motion.

Plaintiff addresses each of the four factors for granting a TRO in turn, and the Court will do the same. First, Plaintiff argues that he is likely to succeed on the merits. Plaintiff reiterates many of the facts from his Amended Complaint and asserts that "the [Hearing is] designed to punish and terminate [Plaintiff] based on his attorney's statements to the media informing the public of the danger involved with having improperly trained firefighter[s] charged with public safety at the airport."[17] He also asserts that he is "living proof" of Defendants' violations of various laws for assigning him to the airport firehouse even though they knew he was not trained or properly certified to fight aircraft fires.[18] He points to Defendants' denial of his appeal of his transfer from his permanent station, an alleged violation of the bargaining agreement with the Union, as further proof that Defendants have retaliated against him.[19]

The Court is unpersuaded by Plaintiff's arguments as to this first factor. Based on the allegations contained in the Amended Complaint, it is not clear to the Court exactly which claims Plaintiff has attempted to bring. Moreover, the Court is unable to conclude that Plaintiff would prevail on the merits of those claims. Thus, the Court finds that this first factor, substantial likelihood of success on the merits, weighs against granting a TRO.[20]

---

[17] (Pl.'s Mot., D.E. # 40, at 7.)

[18] (*Id.*)

[19] (*Id.*)

[20] Based on the Amended Complaint and the facts contained in Plaintiff's Motion alone, the Court is hard-pressed to conclude that Plaintiff would succeed on the merits without holding a hearing. Dual problems prohibit the Court from further developing the factual and

6

Second, Plaintiff argues that the Whistleblower Act was enacted to protect Plaintiff and ensure a meaningful and fair opportunity for him to litigate his retaliation claims; thus, Plaintiff implies that he would suffer an irreparable injury if the Court does not issue a TRO.[21] Plaintiff focuses on the purpose of the Whistleblower Act as "effectively deputizing the eyes and ears of private citizens" and argues that permitting the Hearing to occur would "obstruct justice and set a precedent for future retaliation and instill fear in other firefighters that would come forward."[22] Plaintiff argues that if he is terminated, he will suffer "an unconscionable retaliation in the face of justice," thereby rendering "the whistleblower laws ineffective to protect whistleblowers."[23] Additionally, Plaintiff fears that allowing Defendants to proceed with the Hearing will permit them to gain leverage in this case's litigation and deprive him of the opportunity to finance this lawsuit.[24]

Additionally, Plaintiff argues that he will suffer irreparable harm "if the City of Memphis Fire Department is allowed to use their administrative powers to usurp the protection for wrongful termination granted under the whistleblower laws and there will be no adequate remedy

---

legal basis for a TRO at this time. First, the Court is out of state at a judicial conference, and it is thus unable to hold a hearing before the Hearing occurs tomorrow morning. Second, the Notification issued on Thursday, April 19 at 11:57 p.m.; Plaintiff filed the Motion at 2:38 p.m. on Wednesday, April 25, six days after the Notification issued. The Hearing is set to take place tomorrow, Thursday, April 26 at 7:30 a.m. Thus, the urgency of this Motion was partially caused by Plaintiff's delay in filing it.

[21] (Pl.'s Mot., D.E. # 40, at 7.)

[22] (*Id.* at 7-8.)

[23] (*Id.* at 8.)

[24] (*Id.*)

7

at law."[25] Plaintiff asserts that Defendants seek to violate his protected rights under the whistleblower laws and that "it would be a grave miss carriage [sic] of justice to allow them to proceed with a hearing on the very claims of retaliation before this court."[26] Plaintiff alleges, without citing to any documentation, that Defendants have already investigated and closed the case against him eight months ago and that this Hearing is a mere farce intended to retaliate for statements he made to the media.[27] Plaintiff also asserts that he has been denied representation by legal counsel at the Hearing, and he believes that the Hearing is designed to extract information and to effectually litigate his claims of retaliation that are before the Court.[28] Plaintiff fears that he is facing an unfair and partial hearing.[29]

The Court finds Plaintiff's arguments regarding irreparable injury unavailing. Even if Plaintiff is terminated, the very whistleblower laws upon which he relies in the instant Motion will ensure that he is not *irreparably* injured. Losing one's job is certainly an injury, but whistleblower protection laws exist to ensure that plaintiffs can be fully compensated at law for all of their damages arising from their wrongful terminations. Thus, if Plaintiff's whistleblower claim, to the extent he has made one, should prove meritorious, he will be fully compensated for his injuries, and he will be made whole. Moreover, Plaintiff's assertion that he will not be represented by counsel is contradicted by the Notification, which states that he is entitled to a

---

[25] (*Id.*)

[26] (*Id.* at 9.)

[27] (*Id.*)

[28] (*Id.*)

[29] (*Id.* at 10.)

Union representative. Furthermore, due process exists to protect individuals like Plaintiff from unfair and partial hearings; if Plaintiff believes that the Hearing violates his due process rights, he can seek legal redress in a court of law. Therefore, Plaintiff will not suffer an irreparable injury if the Hearing occurs tomorrow, and this second factor weighs against granting a TRO.

Third, Plaintiff argues that no third parties will be unjustifiably harmed if the TRO is granted and that the public interest will be served by granting a TRO.[30] Plaintiff argues that Defendants will not suffer any unreasonable harm if the Hearing is delayed because they have already suspended him and locked him out of the system.[31] Plaintiff asserts that "the public will benefit greatly because they will still have faith in the protection offered by the Whistleblower laws."[32] He further avers that "it is in the best interest of the public that Defendants are not allowed to hide behind their policies to terminate and punish whistleblowers."[33]

The Court finds that, while it is not in a position to know whether others would suffer substantial harm without issuing a TRO, it will give Plaintiff the benefit of the doubt and find that this factor weights in his favor. However, the fourth factor weighs against granting a TRO. If Plaintiff is terminated as a result of the Hearing, his termination would not preclude any remedies he may have. Moreover, the public's faith in the protections of whistleblower law would not be undermined by Defendants' termination of Plaintiff or the occurrence of the Hearing; instead, the public trust in the rule of law would be harmed only if courts declined to

---

[30] (*Id.*) Plaintiff combines his arguments regarding the third and fourth factors.

[31] (*Id.*)

[32] (*Id.*)

[33] (*Id.* at 11.)

enforce the protections afforded by those laws. Whistleblower laws do not exist to prevent administrative hearings from occurring: they prohibit wrongful terminations and provide adequate remedies at law when wrongful terminations in violation of their provisions do occur. This Court has no intention of undermining the rule of law; denying a TRO in this instance would not be against the public interest, nor would it undermine the public trust. Therefore, the Court finds that the fourth factor weighs against granting a TRO.

After balancing the four factors, the Court finds that they weigh against granting a TRO in this case. Therefore, Plaintiff's Motion for a TRO is **DENIED**. The Court expresses no opinion on Plaintiff's Motion for Preliminary and Permanent Injunction. In his Motion, Plaintiff alternatively requested the Court to "enjoin the Defendant and all persons acting on its behalf from barring [Plaintiff's] legal counsel from the [H]earing and allowing [the H]earing to be recorded by a court reporter."[34] The Court will not grant this relief. The City of Memphis has administrative policies and procedures which the Court presumes are available to Plaintiff and will be followed during the Hearing. Plaintiff has presented no justification for interfering in the administrative process in this way. Therefore, Plaintiff's alternative relief is **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 25, 2012, 6:05 p.m.

---

[34] (*Id.* at 12.)